**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **ROBERT L. WISE,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:10-cv-04488** |
| | § | **Jury Demanded** |
| **UNITED STATES DEPARTMENT OF** | § | |
| **VETERANS AFFAIRS, BANK OF** | § | |
| **AMERICA, N.A., WELLS FARGO** | § | |
| **BANK, N.A., RE/MAX NORTHWEST** | § | |
| **REALTORS, and DELILAH** | § | |
| **BIRMINGHAM** | § | |
| **Defendants.** | § | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT
AND APPLICATION FOR TEMPORARY RESTRAINING ORDER,
TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION**

TO THE HONORABLE JUDGE OF SAID COURT:

1.      Now Comes ROBERT L. WISE and files this Verified Second Amended Petition (and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction) ("Verified Petition") against Defendants United States Department of Veterans Affairs ("Veterans Affairs"), Bank of America, N.A. ("Bank of America"), Wells Fargo Bank, N.A. ("Wells Fargo"), RE/MAX Northwest, and Delilah Birmingham, and would show this Honorable Court and all parties as follows:

**A.  DISCOVERY CONTROL PLAN LEVEL**

2.      Plaintiff intends that discovery be conducted under Discovery Level 3.

**B.  PARTIES AND SERVICE**

3.      Plaintiff, Robert L. Wise, is an Individual whose address is 1805 Branard, Houston, Texas, 77098.

4.        Defendant United States Department of Veterans Affairs, a Department of the United States Government, has been served and has appeared via counsel.  Service of said Defendant is effected as described in the attached Certificate of Service.

5.        Defendant Bank of America, N.A., a federally chartered bank national association, has been served and has appeared via counsel.  Service of said Defendant is effected as described in the attached Certificate of Service.

6.        Defendant Wells Fargo Bank N.A., a federally chartered bank national association, has been served and has appeared via counsel.  Service of said Defendant is effected as described in the attached Certificate of Service.

7.        Defendant RE/MAX Northwest Realtors, a Texas business, has been served and has appeared via counsel.  Service of said Defendant is effected as described in the attached Certificate of Service.

8.        Defendant Delilah Wright Birmingham, a Texas realtor, has been served and has appeared via counsel.  Service of said Defendant is effected as described in the attached Certificate of Service.

## C.  JURISDICTION AND VENUE

9.        The subject matter in controversy is within the jurisdictional limits of this court.

10.        This court has jurisdiction over Defendant Veterans Affairs because said Defendant has purposefully availed itself of the privilege of conducting activities in the State of Texas and established minimum contacts sufficient to confer jurisdiction over said Defendant; the assumption of jurisdiction over Veterans Affairs will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

Plaintiff's Second Amended Complaint

11.     This court has jurisdiction over Defendant Bank of America because said Defendant purposefully availed itself of the privilege of conducting activities in the State of Texas and established minimum contacts sufficient to confer jurisdiction over said Defendant; the assumption of jurisdiction over Bank of America will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

12.     This court has jurisdiction over Defendant Wells Fargo Bank, because said Defendant purposefully availed itself of the privilege of conducting activities in State of Texas and established minimum contacts sufficient to confer jurisdiction over said Defendant, and the assumption of jurisdiction over Wells Fargo Bank NA. will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

13.     This court has jurisdiction over Defendant RE/MAX Northwest because said Defendant has purposefully availed itself of the privilege of conducting activities in the State of Texas and established minimum contacts sufficient to confer jurisdiction over said Defendant; the assumption of jurisdiction over RE/MAX Northwest will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

14.     This court has jurisdiction over Defendant Delilah Birmingham because said Defendant has purposefully availed herself of the privilege of conducting activities in the State of Texas and established minimum contacts sufficient to confer jurisdiction over said Defendant; the assumption of jurisdiction over Delilah Birmingham will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

15.     Venue in Harris County is proper in this cause pursuant to Section 15.002(a)(1) of the Texas Civil Practice and Remedies Code because all or a substantial part of the events or omissions giving rise to this suit occurred in Harris County, Texas, and pursuant to Section

15.011 of the Texas Civil Practice and Remedies Code because this action involves title to real estate located in Harris County.

### D.  NATURE OF CASE

16.      This is a wrongful foreclosure case in which the lender failed to comply with the Texas Constitutional requirements, failed to follow the deed of trust, failed to follow the Texas Property Code, and failed to follow the common law when they wrongfully foreclosed Plaintiff's real property.

17.      Certain Defendants misrepresented the facts and their willingness to enter into a loan modification with Plaintiff.  Certain Defendants committed fraud.  Certain Defendants failed to provide notices as required by law as are conditions precedent to conducting its foreclosure. Certain Defendants breached contracts with Plaintiff.  Certain Defendants have committed negligence proximately causing Plaintiff to lose his home and suffer damages.  Certain Defendants have intentionally inflicted emotional distress upon Plaintiff.

18.      Certain Defendants seek to take for themselves Plaintiff's house and all the accumulated equity of its rightful owner, Plaintiff, Robert L. Wise.

19.      Plaintiff seeks an accounting.  Plaintiff seeks to rescind the Substitute Trustee's Deed. Plaintiff seeks to rescind the conveyance from Defendant Wells Fargo to Defendant Veterans Affairs.  Plaintiff seeks a Temporary Restraining Order restraining Defendants from transferring title to the subject Property, and a temporary injunction and a permanent injunction.  Plaintiff seeks general relief.

### E.  BACKGROUND FACTS

20.      On or about May 26, 2007, Plaintiff purchased real property in Harris County, Texas, described as LOT EIGHT (8), IN BLOCK THREE (3), OF WEST LANCASTER PLACE, AN

4

ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 557, PAGE 62 OF THE DEED RECORDS OF HARRIS COUNTY, TEXAS, with the address of 1810 W. Main, Houston, Texas 77098 (the "Property").  Plaintiff took out a purchase money loan in the sum of $401,000 from Wells Fargo Bank, N.A. and executed a promissory note and deed of trust.  Monthly installments of principal, interest and escrows thereon were about $2,886.00/mo.  The Property is a tri-plex.  Plaintiff resided in one unit and leased the other two.  On April 30, 2008, the Property suffered severe fire damage.  Plaintiff restored the property from his own funds.  However, during May of 2009, there was a miscalculation made in Plaintiff's escrow account with Defendant Wells Fargo that led it to make a demand of approximately $5,000.00.  As Plaintiff was restoring his burned-out home, replacing his and his family's destroyed belongings, and waiting for the insurance claim to be settled, he was unable to make the demanded payment at that time.  Plaintiff made the payment the following month, but a further payment was demanded.  This went on for three months until Defendant Wells Fargo referred Plaintiff to the Home Loan Affordable Modification Program.

21.      On or about October 10, 2009, Plaintiff submitted his first application to the loan modification program with Defendant Wells Fargo.  This first application was rejected with the notation that Plaintiff "failed to submit any documentation," despite the fact that the application was complete.

22.      On October 16, 2009, Plaintiff attempted to tender $16,000.00, the sum in which he was supposedly behind at that point, to Defendant Wells Fargo.  Defendant Wells Fargo refused this offer, again referring Plaintiff to the loan modification program.

Plaintiff's Second Amended Complaint

23.       On or about October 29, 2009, Plaintiff submitted his second application to the loan modification program with Defendant Wells Fargo.  This application was rejected with no comment.  After Plaintiff called Defendant Wells Fargo to inquire about the reasons for the rejection, he was informed that, again, something was missing.

24.       On or about December 9, 2009, Plaintiff submitted his third application to the loan modification program.  Plaintiff called and verified that Wells Fargo had everything required for the application.  With no further notice, Defendants Wells Fargo and Veterans Affairs foreclosed on the property on or about January 5, 2010.

25.       Plaintiff never received, either by First Class or Certified Mail, a Notice of Intent to Accelerate and Demand, a Notice of Loan Acceleration, a Notice of Intent to Foreclose, or a Notice of Substitute Trustee's Sale.

26.       On or about February 14, 2010, Lance Kornicker, Defendant Veterans Affairs' Realty Officer in Washington DC, got in contact with Plaintiff regarding the Property.  Mr. Kornicker discussed with Plaintiff the possibility of rescinding the foreclosure.  Mr. Kornicker was very concerned for Plaintiff's safety and well-being, asking him things, like, "are you seeing a therapist?", "Are you OK?", and "Do you need  to go to the hospital now?" when Plaintiff got upset over the foreclosure.

27.       On or about March 19, 2010, Mr. Kornicker told Plaintiff to file a new application to modify the loan package in an attempt to have Defendant Wells Fargo rescind the foreclosure.  Plaintiff filed a "loss mitigation package" with Wells Fargo as part of this application pursuant to Defendant Wells Fargo's instructions.  The application was turned down and Plaintiff was told that, although there were irregularities with the foreclosure, it would not be rescinded.

Plaintiff's Second Amended Complaint

28.     During the course of the conversations between Plaintiff and Lance Kornicker, Mr. Kornicker promised Plaintiff that, even if all modifications failed, Plaintiff would be the first to have an opportunity to reacquire the property when it went onto the market.

29. One or more of Defendants, Bank of America, RE/MAX, and Delilah Birmingham, then became involved with the listing, marketing, and post-foreclosure management of the property.

30.     On or about June 22, 2010, Defendant Delilah Birmingham visited the Property and informed one of the tenants that the foreclosure on the property had been rescinded.  Word of this information quickly passed to Plaintiff and to many of Plaintiff's acquaintances.  He later discovered that Ms. Birmingham was misinformed and that the foreclosure was still in effect and experienced severe mental anguish and emotional distress upon learning of such reversal.

31.     The Property has an active sewer line running under it that creates an easement that was not disclosed at the time Plaintiff acquired the Property nor in Plaintiff's title policy.  Plaintiff was in the process of pursuing his claims against third parties related to such undisclosed easement at the time Defendants' wrongful conduct occurred.  Such conduct effectively interferes and prevents Plaintiff from completing his pursuit of his claims.

32.     On or about September 1, 2010, the Property was placed on the market.  Plaintiff attempted to bid on the property, but was denied the opportunity to do so.  Plaintiff's friends attempted to view the property so as to purchase the property in their names in an attempt to circumvent this cruel treatment, but were denied that opportunity, as well.

33.     Plaintiff is a disabled veteran of the United States Navy who suffers from post-traumatic stress syndrome directly related to his service.  Defendants are and were aware of this condition.  Following each interaction with Defendants, Plaintiff has missed work and subsequently lost

Plaintiff's Second Amended Complaint

wages and has experienced and suffered mental anguish and has had to make repeated unscheduled visits to his mental health care team.

## ARGUMENT

### F.  DISCLAIMER

34.     Plaintiff disclaims any cause of action for tortious acts or omissions of Defendant United States Department of Veterans Affairs or its employees.  Specifically, the causes of action against Defendant Veterans Affairs are to rescind and declare void a Warranty Deed from Defendant Wells Fargo to Defendant Veterans Affairs, and to impose a constructive trust upon real property currently titled in the name of Defendant Veterans Affairs.  To the extent this paragraph conflicts with any other allegations herein, this paragraph controls.

### G.  WRONGFUL FORECLOSURE

35.     Plaintiff incorporates by reference all factual allegations hereinabove as though recited herein verbatim.

36.     Defendant Wells Fargo purportedly foreclosed upon the homestead real property without sending the required legal notices to either the Property address or Plaintiff's last known address on the records of the lender.  Such notices are required by the loan agreement and are conditions precedent to a Texas non-judicial foreclosure and substitute trustee's deed.  TEX. PROP. CODE ANN. § 51.002 (West 2007).  Lance Kornicker, Chief Realty Officer for Defendant Veterans Affairs, acknowledged and told Plaintiff that there were irregularities in the notices, but that Defendant Wells Fargo refused to rescind the foreclosure.  Further, Defendants' own records show that Plaintiff was not in default just three months prior to the foreclosure, and Defendants were not entitled to foreclose.  Any nonpayment of installments subsequent to that time was in

8

justifiable reliance on instructions to Plaintiff by Defendants or Defendants' representative.  But for Defendant's representations, Plaintiff would have been current on his loan payments. Plaintiff seeks to rescind, vacate, and declare null and void the Substitute Trustee's Deed and the subsequent Warranty Deed transfer from Defendant Wells Fargo to Defendant Veterans Affairs and to recover damages.

37.       Further, Defendant Wells Fargo's participation in the Mortgage Electronic Registration Systems, Inc. ("MERS") has called into question the validity of its title to the Property.  MERS was established by large lenders to allow for easy electronic trading and tracking of mortgages. *Landmark Nat'l Bank v. Kesler*, 192 P.3d 177, 179 (Kan. Ct. App. 2008).  In doing so, these lenders created a system that severs the mortgage from the underlying debt.  Because an assignment of a mortgage without the debt transfers nothing, *Landmark Nat'l Bank*, 192 P.3d at 179, and because foreclosure by one with no title is a nullity, *U.S. Bank Nat'l Ass'n v. Merino*, 836 N.Y.S. 2d 853, 855 (N.Y. Sup. 2007), Defendant Wells Fargo's actions of foreclosing and transferring title were a nullity.

## H.  COMMON LAW FRAUD

38.       Plaintiff incorporates by reference all factual allegations hereinabove as though recited herein verbatim.

39.       Defendant Wells Fargo made material false representations to Plaintiff with the knowledge of their falsity or with reckless disregard of the truth with the intention that such representations be acted upon by Plaintiff, and Plaintiff relied on these representations to his detriment.  The elements of common-law fraud are: (1) a material misrepresentation, (2) which was false, (3) which was either known to be false when made or was asserted without knowledge of its truth, (4) which was intended to be acted upon, (5) which was relied upon, and (6) which

caused injury.  *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998).

40.     Defendant Wells Fargo's presentation of the opportunity to modify Plaintiff's home loan was fraud, as the Home Affordable Modification Program ("HAMP") did not provide a realistic path to recovery for Plaintiff.  The HAMP Inspector General has stated:

41.     Unfortunately, HAMP continues to struggle to achieve its original stated objective, to help millions of homeowners avoid foreclosure "by reducing monthly payments to sustainable levels."  Despite a seemingly ever increasing array of HAMP-related initiatives designed to encourage participation in the program, the number of homeowners being helped through permanent modifications remains anemic.

42. Office of the Special Inspector General for the Troubled Asset Relief Program, *Quarterly Report to Congress*, at 6 (July 21, 2010).  Defendant Wells Fargo agrees to permanent modifications under HAMP in only 12% of eligible cases.  *Id.* at 60.  Defendant Wells Fargo's false representations as to the viability of HAMP as they provided it were fraud.

43.     That HAMP is a viable program is a material misrepresentation that is false.  Defendant Wells Fargo knew this fact to be true at the time it offered HAMP to Plaintiff because it was only modifying 12% of eligible loans.   Defendant intended for Plaintiff to act upon this misrepresentation because it refused to accept his tender of the amount he was in arrears, telling him that he instead had to participate in HAMP.  Plaintiff relied on this representation by repeatedly applying for the modification.  This fraud directly led to Defendant Wells Fargo foreclosing on Plaintiff's Property.

44.      Further, Defendant concealed or failed to disclose material facts within the knowledge of Defendant, Defendant knew that Plaintiff did not have knowledge of the same and did not have equal opportunity to discover the truth, and Defendant intended to induce Plaintiff to enter into the transaction made the basis of this suit by such concealment or failure to disclose.

45.      As a proximate result of such fraud, Plaintiff sustained the damages described herein.

## I.   STATUTORY FRAUD

46.      Plaintiff incorporates by reference all factual allegations hereinabove as though recited herein verbatim.

47.      Fraud in a transaction involving real estate . . . consists of a . . . false promise to do an act, when the false promise is (A) material; (B) made with the intention of not fulfilling it; (C) made to a person for the purpose of inducing that person to enter into a contract; and (D) relied on by that person in entering into that contract.

48. TEX. BUS. & COM. CODE ANN. § 27.01 (West 2009).

49.      Defendant Wells Fargo's promise that they would enroll Plaintiff in HAMP was a material false promise made with no intention on their part of fulfilling it.  It was made for the purpose of inducing Plaintiff into applying for HAMP and Plaintiff relied on this promise.

## J.   FRAUD BY OMISSION

50.      Plaintiff incorporates by reference all factual allegations hereinabove as though recited herein verbatim.

51.      Fraud by omission occurs when:

1) a party conceals or fails to disclose a material fact within the knowledge of that

party,

11

2) the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth,

3) the party intends to induce the other party to take some action by concealing or failing to disclose the fact, and

4) the other party suffers injury as a result of acting without knowledge of the undisclosed fact.

52. *Bradford v. Vento*, 48 S.W.3d 749, 744-45 (Tex. 2001).  There must also be a duty to disclose. *Id*.

53.     The theory of duty as set out in RESTATEMENT (SECOND) OF TORTS § 511 (Liability For Nondisclosure) applies in this situation.  *See Hoggett v. Brown*, 971 S.W.2d 472, 487 (Tex. App.--Houston [14th Dist.] 1997, no writ); *Ralston Purina Co. v. McKendrick*, 850 S.W.2d 629, 633-36 (Tex. App.--San Antonio 1993, writ denied).  One of the situations when a duty to disclose exists as to a party in a business transaction, is regarding "facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts."  RESTATEMENT (SECOND) OF TORTS § 511(2)(e).  The fact that HAMP would not benefit Plaintiff even as that program was being offered as a supposed lifeline was a fact so basic to the transaction as to put the duty of its disclosure on Defendants.

54.     Defendant Wells Fargo was aware that it was only granting relief in 12% of eligible cases, thus their failure to discuss this material fact, and Plaintiff's inability to discover this same information on his own, as this information was only recently made public in the Special

Plaintiff's Second Amended Complaint

Inspector General's Report, coupled with Defendant's inducement of Plaintiff into using the HAMP, resulted in the harm of foreclosure of Plaintiff's Property.

55. Further, the Defendants failure to correct their misrepresentations that Plaintiff would be eligible to reacquire the property and that the property would be offered to him before than to the general public constitutes fraud by omission.

## K. NEGLIGENCE

56. Plaintiff incorporates by reference all factual allegations hereinabove as though recited herein verbatim.

57. In the course of the transactions between Plaintiff and Defendant Wells Fargo, Defendant owed Plaintiff a duty to exercise ordinary care; a duty to engage in commercially reasonable business practices; a duty of good faith and fair dealing; and a duty to send by certified mail, return receipt requested, to the Property address and the last known address of the borrower on its records, pre-foreclosure notices, including a notice of default and demand to cure, notice of intent to accelerate, notice of acceleration, notice of intent to foreclose, and notice of substitute trustee sale, among other duties. Said Defendant also owed Plaintiff a duty of ordinary care to manage his escrow account and taxes and insurance payments and policies.

58. Defendant failed to exercise ordinary care in performing each such duty. The acts and/or omissions of Defendant Wells Fargo by which Defendant breached each such duty(ies) constitute a proximate cause of the damages of Plaintiff described herein, for which Defendant is liable to Plaintiff.

59. Similarly, Defendants Bank of America, RE/MAX, and Delilah Birmingham each owed duties of ordinary care to Plaintiff and failed in their duties as to communications with third parties regarding the Plaintiff in managing the property and third party relationships related to

Plaintiff's Second Amended Complaint

the property and in preserving the property from waste and vandalism.  By breaching these duties, they caused Plaintiff severe mental anguish.

60.        Further, Defendants Bank of America, RE/MAX, and Delilah Birmingham owed Plaintiff duties to exercise ordinary care in listing and marketing the Property, which they failed to do. By keeping the Property on the market for only 24 hours, they failed to allow it to reach its fair market value, thus did not allow Plaintiff to reacquire the property as promised or to mitigate his debt to Defendant Veterans Affairs.

## L.  NEGLIGENT MISREPRESENTATION

61.        Plaintiff incorporates by reference all factual allegations hereinabove as though recited herein verbatim.

62.        Plaintiff asserts a cause of action for negligent misrepresentation against Defendant Wells Fargo, as provided by *Federal Land Bank Association of Tyler v. Sloane*, 825 S.W.2d 439 (Tex. 1991).  The elements of a negligent misrepresentation claim are: (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.  *Id*. at 442.

63.        Defendant Wells Fargo made multiple representations to Plaintiff that he would be able to modify his home loan and later that the foreclosure would be considered for rescission. Plaintiff justifiably relied on these representations and was damaged as described herein.

64. Similarly, Defendants Bank of America, RE/MAX, and Delilah Birmingham made multiple misrepresentations to Plaintiff, including that Wells Fargo and Veterans Affairs had rescinded

14

the foreclosure and that his loan and property ownership were reinstated and later that Plaintiff

was eligible to reacquire the property and that they, Defendants Bank of America, REMAL, and

Delilah Birmingham, would offer the property first to Plaintiff to bid before offering it to the

public on the open market.

## M. BREACH OF CONTRACT

65.  Plaintiff incorporates by reference all factual allegations hereinabove as though recited

herein verbatim.

66.  The elements of a breach of contract claim are: (1) the existence of a valid contract, (2)

performance or tendered performance by the plaintiff, (3) breach of the contract by the

defendant, and (4) resulting damages to the plaintiff.  *E.g.*, *Williams v. Unifund CCR Partners*

*Assignee Of Citibank*, 264 S.W.3d 231, 235-36 (Tex. App.--Houston [1st Dist.] 2008, no pet.).

67.  Defendants Wells Fargo and Veterans Affairs have a contract or are the Transferee of the

Lender's contract with Plaintiff.  Plaintiff performed his part of the contract by attempting to cure

a purported arrearage by attempting to tender the amount by which he was purportedly behind

and by complying with all of Defendant Wells Fargo's requirements and instructions in

attempting to modify the loan agreement multiple times in order to ensure continued

performance.   Defendants have breached said contract by failing to review and approve

insurance policy, by failing to accept Plaintiff's attempted tender, by failing to give required

notices, by failing to engage in good faith negotiations, by terminating the modification and

workout relationship without good cause or reasonable basis, by failing to timely or reasonably

communicate with Plaintiff, by wrongfully foreclosing without complying with the statutory

requirements or the requirements of the deed of trust and loan agreement, and by failing to

Plaintiff's Second Amended Complaint

properly manage Plaintiff's escrow account.  Plaintiff has been damaged by such breaches, for which Plaintiff here sues.

### N.  PROMISSORY ESTOPPEL

68.      Plaintiff incorporates by reference all factual allegations hereinabove as though recited herein verbatim.

69.      Plaintiff detrimentally relied on Defendant Wells Fargo's representations as to the validity of the loan modification program.  The elements of promissory estoppel are: (1) a promise, (2) foreseeability of reliance on the promise by the promisor, and (3) substantial detrimental reliance by the promisee.  *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983).  In offering the Home Affordable Modification Program to Plaintiff, Defendant impliedly promised that the program would be a viable method for remedying his deficiencies and staving off foreclosure.  As discussed above, this program was designed to fail, not to help homeowners.  Further, even if HAMP could work, it fails as implemented by Wells Fargo.  However, Plaintiff was told that this program was the only viable means by which he could remedy the deficiency in his mortgage.  Not only could Plaintiff's reliance on the HAMP be foreseen, it could not be avoided.  Plaintiff detrimentally relied on the HAMP by attempting in vain to modify his home loan instead of being allowed to tender the amount in which he was purportedly in arrears and in refraining from seeking to enjoin a foreclosure prior to it occurring.

### O.  BREACH OF WARRANTY

70.      Plaintiff incorporates by reference all factual allegations hereinabove as though recited herein verbatim.

71.      Plaintiff would show that Defendants breached implied and express warranties they made to Plaintiff.  The elements of a claim for breach of warranty for services are (1) the defendant

Plaintiff's Second Amended Complaint

sold services to the plaintiff; (2) the defendant made a representation to the plaintiff about the characteristics of the services by affirmation of fact, by promise, or by description; (3) the representation became part of the basis of the bargain; (4) the defendant breached the warranty; (5) the plaintiff notified the defendant of the breach; and (6) the plaintiff suffered injury. *Paragon Gen. Contractors, Inc. v. Larco Const., Inc.*, 227 S.W.3d 876, 886 (Tex. App.--Dallas 2007, no pet.); *see Sw. Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 576-77 & n. 3 (Tex. 1991).

72.     Defendant Wells Fargo sold mortgage services to Plaintiff.  Defendant made a representation that these services would be renegotiated in a manner that would help Plaintiff get his mortgage out of arrears.  Instead, the Home Affordable Modification Program put Plaintiff into foreclosure.  Plaintiff has been damaged as a result of Defendants' breach of warranty, for which Plaintiff herein sues.

73.     Defendant Wells Fargo made implied and express warranties to Plaintiff in connection with the loan agreement.  Defendant Wells Fargo breached such warranties.  Plaintiff has been damaged as a result.

## P.  DECEPTIVE TRADE PRACTICE

74.     Plaintiff incorporates by reference all factual allegations hereinabove as though recited herein verbatim.

75.     Plaintiff would show that Defendant Wells Fargo engaged in certain false, misleading or deceptive acts, practices and/or omissions actionable under the Texas Deceptive Trade Practices Act as alleged herein.  The term "false, misleading, or deceptive acts or practices" includes:

76.     failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was

intended to induce the consumer into a transaction into which the consumer would

not have entered had the information been disclosed.

77. TEX. BUS. & COM. CODE ANN. § 17.46(b)(24) (West 2002 & Supp. 2010).

78.     Defendant Wells Fargo committed "false, misleading, or deceptive acts or practices" by

referring Plaintiff to the loan modification program instead of accepting his offer to tender of the

$16,000 that he was purportedly in arrears when he offered it.

79.     Defendant Wells Fargo engaged in an unconscionable action or course of action to the

detriment of the Plaintiff in that Defendant took advantage of the lack of knowledge, ability,

experience, and/or capacity of Plaintiff to a grossly unfair degree.  Defendant committed these

acts "knowingly," in that Defendant had actual awareness of the falsity deception or unfairness of

such acts, practices and/or omissions.

80.     Defendant Wells Fargo also represented to Plaintiff that the agreements between them

conferred or involved rights, remedies, or obligations which it did not have or involve, or were

prohibited by law.  Defendant committed these acts "knowingly," in that Wells Fargo had actual

awareness of the falsity, deception or unfairness of such acts, practices and/or omissions.

81.     Plaintiff would further show that the acts, practice, and/or omissions complained of were

the producing cause of Plaintiff's damages more fully described herein.  Further, Plaintiff relied

upon the acts, practices, and/or omissions complained of to the Plaintiff's detriment.

## Q.  FAILURE TO PROPERLY MANAGE PROPERTY

82.     Plaintiff incorporates by reference all factual allegations hereinabove as though recited

herein verbatim.

83.     Defendants Bank of America, RE/MAX, and Delilah Birmingham failed to properly

follow the Protecting Tenants at Foreclosure Act of 2009, Pub. L. 111-22, § 702.  The Act

Plaintiff's Second Amended Complaint

provides that a successor in interest takes property following a foreclosure subject to "the rights of any bona fide tenant, as of the date of such notice of foreclosure." *Id*. By failing to maintain the property or otherwise manage it in any way, these defendants caused harm to Plaintiff in that he was forced to continue to pay the utilities after the foreclosure, as his tenants' leases had not ended. Plaintiff wishes to recover these costs and damages.

84. Defendants Bank of America, RE/MAX, and Delilah Birmingham failed to account for rental income, which would have been applied to the loan, and for loss of security deposits, which Plaintiff had to refund his tenants.

85. Defendants Bank of America, RE/MAX, and Delilah Birmingham also failed to properly secure and preserve the property, causing deterioration and other damages.

### R.  TORTIOUS INTERFERENCE

86. Plaintiff incorporates by reference all factual allegations hereinabove as though recited herein verbatim.

87. Defendant Wells Fargo has tortiously interfered with Plaintiff's contractual relationships with third parties. The elements of tortious interference with a contract are (1) existence of a contract subject to interference, (2) willful and intentional interference, (3) interference that proximately caused damage, and (4) actual damage or loss. *Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 456 (Tex. 1998).

88. Defendant Wells Fargo has also tortiously interfered with Plaintiff's prospective business relationships. The elements of a claim for tortious interference with a prospective business relationship are (1) a reasonable probability that the plaintiff would have entered into a business relationship; (2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the

Plaintiff's Second Amended Complaint

relationship from occurring or the defendant knew the interference was certain or substantially certain to occur as a result of the conduct; and (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference.  *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 860 (Tex. App.--Houston [14th Dist.] 2001, pet. denied).

89.     At the time of the foreclosure, Plaintiff was pursuing claims against his title company for its error in failing to discover the existence of the sewer line running under the Property at the time that Plaintiff purchased the Property.  The title company cut off negotiations over this valuable claim with Plaintiff following the foreclosure.  Defendant Wells Fargo's conduct interfered with Plaintiff's pursuit of this and other claims and Plaintiff was damaged as a result thereof.

90.     Further, Plaintiff had existing landlord/tenant relationships with tenants of the property. Defendants Bank of America, RE/MAX, and Delilah Birmingham's conduct interfered with such relationships, causing Plaintiff to be required to refund security deposits, pay utilities, and suffer other damages.

### S.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

91.     Plaintiff incorporates by reference all factual allegations hereinabove as though recited herein verbatim.

92.     Defendants Wells Fargo, Bank of America, RE/MAX, and Delilah Birmingham intentionally inflicted emotional distress upon Plaintiff in a variety of ways:  As spelled out below, they took his home while falsely presenting an opportunity to modify his home loan and without providing proper notice; they misrepresented the status of the loan modification application each time the application was submitted; they feigned a later opportunity to modify that was then denied; they even told Plaintiff and other third parties with whom Plaintiff had

Plaintiff's Second Amended Complaint

relationships that the foreclosure had been rescinded, then thereafter took back the comments. They allowed the property to become vacant and to suffer deterioration. They disclosed to third parties the nature of Plaintiff's private health and psychological conditions. They also prevented Plaintiff and third parties acting in his interests from bidding on the Property once it came onto the market, after having represented to Plaintiff that he would have such right and opportunity.

93.     The elements for intentional infliction of emotional distress are (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress that the plaintiff suffered was severe. *Brewerton v. Dalrymple*, 997 S.W.2d 212, 215 (Tex. 1999).

94.     Defendant Wells Fargo's false presentation of an opportunity to modify Plaintiff's home loan is intentional infliction of emotional distress because: (1) This Defendant acted intentionally by specifically requesting that Plaintiff participate in the HAMP loan modification program. (2) By offering something that it was not able to provide, and by repeatedly misstating or misrepresenting the factual basis for its denials and for requiring resubmission of Plaintiff's applications, its conduct was extreme and outrageous. As discussed above in Section H, HAMP loan modification as provided by Defendant Wells Fargo was not a realistic option. A person's home is generally his most valuable asset and a source of great pride. Defendant's conduct in requiring Plaintiff to participate in HAMP and denying Plaintiff access to any more reasonable loan modification program was extreme and outrageous. Defendant's refusal to accept Plaintiff's tender of the purported arrearage when Plaintiff was in a position to cure was also extreme and outrageous. (3) Plaintiff Robert L. Wise experienced emotional distress as a result of this conduct. (4) The emotional distress experienced by Plaintiff was so severe that he lost many days of work and he had to make several unscheduled visits to his mental health care providers.

95.     Defendant Wells Fargo committed intentional infliction of emotional distress against Plaintiff when it feigned a post-foreclosure opportunity to modify the loan in March of 2010 that was then denied because:  (1) This conduct was reckless in that it occurred in deliberate disregard of a high degree of probability that the emotional distress will follow.  *See* RESTATEMENT (SECOND) OF TORTS § 46.  (2) Further, Defendant's conduct was extreme and dangerous, as it knew of Plaintiff's psychological condition.  Defendant Wells Fargo was in contact with officials for Defendant Veterans Affairs and had been provided access to this knowledge.  The Veterans Affairs person with whom Plaintiff had some regular communication, Mr. Lance Kornicker, the Veterans Affairs Realty Officer, would ask after Plaintiff's well-being when they spoke.  Mr. Kornicker was also the official at Veterans Affairs who, on information and belief, at the instruction or suggestion of Defendant Wells Fargo, told Plaintiff to resubmit his application for modification to Defendant Wells Fargo.  (3) Plaintiff experienced emotional distress that (4) was so severe as to cause him the damages described herein.

96.     Defendants Wells Fargo's failure to modify the loan on several occasions, its misrepresentation of the status of the loan modification application, and its misrepresentation of the reasons for the loan's denial and for requiring resubmission was intentional infliction of emotional distress because: (1) This Defendant acted intentionally in that it intended for Plaintiff to continue with the loan modification process and recklessly in that it was not concerned for the emotional distress that its callous actions would cause.  (2) Its conduct was extreme and outrageous.  Americans were promised that HAMP would give them a lifeline to save their homes, not a Kafkaesque bureaucracy that seems to exist to frustrate already desperate homeowners.  Just because this nightmare is experienced on such a large scale makes it no less

Plaintiff's Second Amended Complaint

extreme and outrageous.  (3) Plaintiff experienced emotional distress that (4) was so severe as to cause him the damages described herein.

97.     Defendants Wells Fargo, Bank of America, Re/Max Northwest, and Delilah Birmingham all intentionally inflicted emotional distress in mismanaging their post-foreclosure duties and in telling Plaintiff and his neighbors on June 22, 2010 that his foreclosure was rescinded and in communicating with each other and to third parties concerning Plaintiff's psychological condition.  (1) This conduct was both intentional and reckless.  Defendant Delilah Birmingham had not been properly executing her duties as the post-foreclosure property manager.  She had not been paying the utilities for the tenants of the Property and had not been to visit the Property to meet the tenants or to collect their rent.  Plaintiff had mentioned this to her.  Her actions were, in part, clearly retaliation for his comments.  Her actions were reckless; she acted in deliberate disregard of the high degree of probability that emotional distress would follow.  (2) Further, Defendants' conduct was extreme and dangerous, as they knew of Plaintiff's psychological condition.  In fact, this conduct would be extreme and dangerous if performed against a perfectly healthy person.  Anyone who has had his home, his pride and joy, taken away and then suddenly publicly returned would feel devastated by the successive news that these facts were not true. This was only exacerbated by Defendant Delilah Birmingham's reply of, "I don't know," when she was asked why she had made those false representations.  (3) Plaintiff clearly experienced emotional distress.  (4) Plaintiff's emotional distress was so severe that he missed two weeks of work and had to receive additional counseling from his doctors.

98.     Defendants Wells Fargo, Bank of America, Re/Max Northwest, and Delilah Birmingham intentionally inflicted emotional distress in preventing Plaintiff from attempting to reacquire the Property once it was put onto the market on or about September 1, 2010, after having represented

to Plaintiff that this was a right and an opportunity that he did have.  (1) This conduct is intentional in that Defendants knew that Plaintiff wanted and still wants to reacquire the property, including through bidding on it on the postforeclosure market, and they are acting to keep him from doing so.  (2) This conduct is extreme and dangerous, as they know of Plaintiff's psychological condition.  Acting in this way toward Plaintiff is cruel.  Plaintiff was promised an opportunity to reacquire the Property and was not given that opportunity, as the listing was purportedly closed after one day.  Defendants promised to inform Plaintiff when the Property was available and they failed to do so.  While he prefers that the foreclosure and trustee's sale be overturned, rescinded, and vacated, he at least expected the promised chance to reacquire his homestead Property.   (3) Plaintiff is experiencing continuous emotional distress over this situation.  (4) This distress is so severe as to cause him the damages described herein.

## T.  CONSPIRACY

99.      Plaintiff incorporates by reference all factual allegations hereinabove as though recited herein verbatim.

100.      The elements of civil conspiracy include: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result.  *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005).  Conspiracy is a derivative tort requiring an unlawful means or purpose.  *Chu v. Hong*, 249 S.W.3d 441, 444 (Tex. 2008).

101.      Defendants Wells Fargo, Bank of America, RE/MAX Northwest, and Delilah Birmingham engaged in conspiracy when they committed wrongful foreclosure, fraud, negligence, negligent misrepresentation, and intentional infliction of emotional distress.  Their goal during this process has been to wrongfully deprive Plaintiff of his Property.  It was more

24

Plaintiff's Second Amended Complaint

cost-effective and profitable to Defendants to foreclose and transfer to Defendant Veterans Affairs than to honor the terms of the loan agreement and their promises to Plaintiff, and proceed with loan modification.

## U.  CONSTRUCTIVE TRUST

102.	Plaintiff incorporates by reference all factual allegations hereinabove as though recited herein verbatim.

103.	Defendants Wells Fargo and Veterans Affairs have taken legal title to the Plaintiff's Property by virtue of an unlawful, non-judicial foreclosure and the substitute trustee's sale. Plaintiff seeks to impose a Constructive Trust upon such legal title in Defendants' names for equitable and legal benefit and exclusive rights to title and possession for Plaintiff.  To be entitled to a constructive trust, Plaintiff must show:  (1) Breach of an informal relationship of special trust or confidence arising prior to the transaction in question, or actual fraud; (2) Unjust enrichment of the wrongdoer; and (3) Tracing to an identifiable res.  *In re Marriage of Harrison*, 310 S.W.3d 209, 212 (Tex. App.--Amarillo 2010, pet. denied).

104.	A special relationship exists between veterans and Defendant Veterans Affairs. Especially with disabled veterans, Veterans Affairs has a special duty to provide lifelong disability payments and health care, education benefits, employment assistance, housing for indigent veterans, among a multitude of other benefits.  This special relationship exists between Plaintiff and Defendant Veterans Affairs, and through them to Defendant Wells Fargo.  Breach occurred when Defendant Wells Fargo failed to offer a valid means for modification, failed to modify, failed to accept tender, foreclosed, and failed to allow Plaintiff to reacquire the Property, among other breaches.  Defendant Wells Fargo was unjustly enriched in at least the amount of Plaintiff's equity in the Property.  Defendant Veterans Affairs was enriched by possession of the

25

property and by the amount of the debt that it will hold Plaintiff liable for before allowing him to finance another Veterans Affairs loan, as well as by the value of Plaintiff's repairs and improvements in excess of the purchase money loan that was secured by the property.

## V.  ACTION TO QUIET TITLE

105.    Plaintiff incorporates by reference all factual allegations hereinabove as though recited herein verbatim.

106.    A party seeking to remove a cloud from a title to property must plead and prove three basic elements:  (1) an interest in specific property, (2) that title to the property is affected by a claim by the defendant, and  (3) that the claim, although facially valid, is invalid or unenforceable.  *See*, *e.g.*, *Sadler v. Duvall*, 815 S.W.2d 285, 293 n.2 (Tex. App.--Texarkana 1991, writ denied) ("A cloud on title exists when an outstanding claim or encumbrance is shown which, on its face, if valid, would affect or impair the title of the owner of the property."); *La Fleaur v. Kinard*, 161 S.W.2d 144, 147 (Tex. Civ. App.--Beaumont 1942, writ ref'd w.o.m.).

107.    This foreclosure was improper because of Defendant Wells Fargo's failure to comply with statutory and contractual requirements and conditions precedent, thus rendering it invalid and unenforceable.   Plaintiff's fee simple title to the property is affected by Defendant's foreclosure-related claims.  Therefore, a quiet title action is appropriate in favor of Plaintiff.

108.    Further, Plaintiff has an equitable interest in the property by virtue of the promise made to allow him to reacquire the property.  *See Henry v. Mr. M Convenience Stores, Inc.*, 543 S.W.2d 393, 396 (Tex. Civ. App.--Houston [14th Dist.] 1976, writ ref'd n.r.e.) ("It is well settled in Texas that a vendee of land with full knowledge of a purchaser's rights under a contract for the sale of the land is in the same position as the vendor in a suit by the purchaser for specific

performance.").  Defendants Bank of America, RE/MAX, and Delilah Birmingham were aware of Defendant Veterans Affairs' promise to Plaintiff, thus were bound by this promise.

## RELIEF REQUESTED

### W. ACTUAL DAMAGES

109.     Plaintiff sustained following actual damages as a result of the actions and/or omissions of Defendants described herein, including, but not limited to:

     (a)     Out-of-pocket expenses

     (b)     Loss of use

     (c )     Loss of benefit of the bargain

     (d)     Loss of credit and damage to credit reputation

     (e)     Loss of wages

     (f)     Loss of rental

     (g)     Loss of real property title

     (h)     Pain and suffering

     (i)     Mental anguish and emotional distress

     (j)     Reasonable & necessary attorney fees and expenses

     (k)     all other damages resulting from and related to the foreclosure of the Property.

110.     The damages sought are within the jurisdictional limits of this Court.

## X.  EXEMPLARY DAMAGES

111.     Plaintiff would further show that the acts and omissions of Defendants Wells Fargo, Bank of America, RE/MAX, and Delilah Birmingham complained of were committed knowingly, wilfully, intentionally, with actual awareness, and with the specific and predetermined intention

of enriching said Defendants at the expense of the Plaintiff.  In order to punish said Defendants for such unconscionable overreaching and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery from said Defendants for exemplary damages as provided by Section 41.003(1) of the Texas Civil Practice and Remedies Code.

## Y.  ACCOUNTING

112.    Defendants' records are unreliable and in error.  Plaintiff seeks an accounting, including of the underlying loan and escrow accounts, and of tenant rentals, utilities, and deposits.

113.    Plaintiff further seeks proof that Defendants had an actual right to foreclose through a showing that Defendants are the possessors of the original signed title to the Property.

## Z.  SPECIFIC PERFORMANCE

114.    Alternatively, and without waiving the foregoing, Plaintiff requires specific performance of:

(1) Defendant Wells Fargo promised Plaintiff a HAMP loan modification.  Plaintiff fully performed.  Plaintiff requires that Wells Fargo specifically perform by reinstating and providing the loan modification.

(2) Alternatively, Defendant Wells Fargo failed to comply with the contractual and statutory conditions precedent to nonjudicial foreclosure.  Plaintiff requires Defendant to reinstate and to specifically perform by complying with all notice requirements before foreclosing.

(3) Alternatively, and without waiving the foregoing, Plaintiff requires specific performance of the agreement by Lance Kornicker, Defendant Veterans Affairs' Realty Officer, that Plaintiff would be able to reacquire his property.  Specific performance is an equitable remedy that may be awarded upon a showing of breach of contract.  *Stafford v. Southern Vanity Magazine, Inc.*, 231 S.W.3d 530, 535 (Tex. App.--Dallas 2007, pet. denied).  An

Plaintiff's Second Amended Complaint

oral agreement existed between Plaintiff and Mr. Kornicker that Plaintiff would refrain

from suing Defendants Wells Fargo and Bank of America.  In return, Mr. Kornicker

promised Plaintiff that they would notify Plaintiff of the listing and that he would be the

first to have the opportunity to reacquire the Property when it was listed.  Defendants

have breached and are breaching this agreement.  Plaintiff seeks specific performance so

that the Property is made available to Plaintiff before anyone else, as was agreed.

### AA.   ATTORNEY'S FEES

115.      Request is made for all costs and reasonable and necessary attorney's fees incurred by or

on behalf of Plaintiff herein, including all fees necessary in the event of an appeal of this cause to

the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just, as

provided for in TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (West 2008).

### BB.   APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

116.      Plaintiff requires injunctive relief to prevent Defendants from selling the Property, in

breach of Defendants' fiduciary duty.

117.      Plaintiff has alleged several causes of action against Defendants, and as indicated in this

petition, Plaintiff has shown a probable right of recovery and likelihood of success on the merits,

Plaintiff will suffer imminent, irreparable harm without Court intervention, and there is no

adequate remedy at law.

118.      As a direct and proximate result of Defendants' wrongful actions as alleged in this

petition, Plaintiff has suffered and will continue to suffer imminent injury that will be irreparable

and for which no remedy at law exists without the protections of a temporary restraining order

and injunctive relief.  Plaintiff is willing to post the necessary reasonable bond to facilitate the injunctive relief requested.

119.     The only adequate, effective, and complete relief to Plaintiff is to restrain Defendants from further engaging in certain proscribed activities, as set forth below.  Pursuant to TEX. R. CIV. P. § 680 et seq. and TEX. CIV. PRAC. & REM. CODE § 65.001 et seq., and in order to preserve the status quo during the pendency of this action, the plaintiff seeks a temporary restraining order, and upon hearing, a temporary and permanent injunction, ordering and immediately restraining the defendant, including the defendant's agents, servants, employees, independent contractors, attorneys, representatives, and those persons or entities in active concert or participation with them as follows:

120.     Enjoining Defendants from selling, transferring title to, listing, conveying title to, encumbering, possessing, marketing, showing to prospective buyers, allowing waste and deterioration upon, and/or entering into any contracts for a sale of or otherwise concerning the Property while this Court considers the merits of this Petition.

121.     Plaintiff asks the Court to set this application for temporary injunction for a hearing, and after the hearing, to issue a temporary injunction against Defendants.

122.     Plaintiff asks the court to set this request for a permanent injunction for a full trial on the merits and, after the trial, to issue a permanent injunction against Defendants.

## CC.     CONDITIONS PRECEDENT

123.     All conditions precedent to Plaintiff's claims for relief have been performed or have occurred.

Plaintiff's Second Amended Complaint

## DD.    REQUEST FOR DISCLOSURE

124.    Pursuant to Rule 194 of the Texas Rules of Civil Procedure, each Defendant has been requested to disclose the information and material described in Rule 194.2 within fifty days of the original service thereon of this request.

## EE.    PRAYER

125.    **WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Robert L. Wise, respectfully prays that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants for:

1. A temporary restraining order, and upon hearing, a preliminary injunction for the relief requested above;

2. Upon final trial, judgment against Defendants for full permanent injunctive relief, to rescind and vacate and declare null and void the substitute trustee's sale and the conveyance to Defendant Veterans Affairs, and for the full amount of Plaintiff's actual damages as found by the trier of fact as a consequence of each Defendant's conduct, and such additional damages as may be provided for by applicable statute or law including exemplary damages; alternatively for specific performance in allowing Plaintiff to repurchase the Property

3. Constructive trust;

4. Prejudgment interest as provided by law;

5. Postjudgment interest as provided by law;

6. Plaintiff's reasonable and necessary attorneys' fees in prosecuting his claims through trial and, if necessary, through appeal;

7. All costs of suit; and

Plaintiff's Second Amended Complaint

8. Such other and further relief, at law or in equity, to which Plaintiff may show himself justly entitled.

Respectfully submitted,

By: *Anne K. Ritchie*
Anne K. Ritchie
Texas Bar No. 00794532
Appearing pro hac vice
2010 McClendon #1
Houston, Texas  77030
Tel. (832) 767-0406
Cell (281) 660-4666
Fax. (832) 203-1525
Attorney for Plaintiff
Robert L. Wise

By: *Barry S. Baumgarten*
Barry S. Baumgarten
Texas Bar No. 01931980
Fed Bar No. 73917
2402 Commonwealth Street #100
Houston, Texas  77006
Tel. (713) 247-9500
Fax. (713) 222-7002
Attorney for Plaintiff
Robert L. Wise

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY**

Plaintiff's Second Amended Complaint

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2010, a true and correct copy of the foregoing was sent by electronic document transfer through the Court's electronic filing system to the attorneys of record as indicated below.

/s/ *Anne K. Ritchie*

By: Anne K. Ritchie
Attorney for Robert L. Wise, Plaintiff.

C. Charles Townsend
SBN 24028053  FBN: 1018722
Joshua Bennett
SBN 24059444  FBN: 1048588
Akerman Senterfitt, LLP
Plaza of the Americas, Suite S1900
600 North Pearl Street
Dallas, Texas  75201
Tel.: (214) 720-4300
Fax: (214) 981-9339
joshua.bennett@akerman.com
Attorneys for Defendants Bank of America,
N.A. and United States Department of
Veterans Affairs

Daniel David Hu
SBN: 10131415; FBN: 7959
Assistant United States Attorney
P.O. Box 61129
Houston, TX 77208-1129
Telephone: (713) 567-9518
Facsimile: (713) 718-3303
Attorney for Defendant United States
Department of Veterans Affairs

George A. Kurisky, Jr.
SBN 11767700
Mark A. Bankston
SBN 24001430
Johnson, Deluca, Kennedy & Kurisky
1221 Lamar St., Ste 1000
Houston, Texas  77010-3050
Tel.: (713) 652-2525
Fax: (713) 652-5130
mbankston@jdkklaw.com
Attorneys for Defendant Wells Fargo Bank,
N.A.

Marshall G. Rosenberg
SBN 12771450
Barker Lyman, P.C.
3800 One Houston Center
1221 McKinney Street
Houston, Texas 77010
Tel.: (713) 759-1990
Fax: (713) 652-2419
MRosenberg@LymanLaw.com
Attorney for Defendants RE/MAX
Northwest Realtors and Delilah Birmingham

Plaintiff's Second Amended Complaint

## VERIFICATION

BEFORE ME, the undersigned authority, personally appeared Robert L. Wise, who being duly sworn, deposed as follows:

"My name is Robert L. Wise. I am at least 18 years of age and of sound mind. I am personally acquainted with the facts alleged in verified pleas in Plaintiff's Original Petition. I hereby swear that the statements in support thereof are true and correct."

Robert L. Wise, Plaintiff

**SUBSCRIBED AND SWORN TO BEFORE ME** on ,
by

Notary Public, State of Texas

DAVID ALENCASTRO
Notary Public, State of Texas
My Commission Expires
May 08, 2013